IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**LARRY BRYANT NETTLES,**

      **Petitioner,**

**v.**                                  **Case No. 5:18cv274-MCR/CAS**

**MARK S. INCH,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On October 23, 2018, Petitioner, Larry Bryant Nettles, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1 (as per mailing stamp ECF No. 1 at 24).  Respondent filed an answer and incorporated memorandum of law on June 14, 2019.  ECF No. 9.  Petitioner filed a reply on June 28, 2019.  ECF No. 10.  After the Court learned of continued post-conviction proceedings in the state court relating to this conviction and sentence, on July 24, 2019, the Court entered an order allowing Petitioner to file an amended § 2254 petition to assert any claims that he may wish to raise arising out of the affirmance of denial of post-conviction relief by the First District Court of

Appeal in case number 1D19-150.  ECF No. 11.  The affirmance by the state court was issued on July 18, 2019.  *See* Nettles v. State, 275 So. 3d 1181 (Fla. 1st DCA 2019) (table).  Pursuant to the order of this Court, Petitioner was required to file any amended petition by September 9, 2019. No amended petition has been filed and no motion for extension of time to file such petition has been received by this Court.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

Petitioner was charged by Amended Information in the Circuit Court of Holmes County, Florida with Count I, possession of a controlled substance, methamphetamine, and Count II, driving while license

suspended.  Ex. A at 26.[1]  After a jury trial on April 24-25, 2017, Petitioner was found guilty as charged.  Ex. B at 83-84.  Petitioner was sentenced to three years in prison with credit for 15 days time served on Count I and time served on Count II, plus costs and fines.  Ex. B at 90.

Petitioner appealed his judgment and sentence for possession of a controlled substance and counsel filed an Anders brief.[2]  Ex. C.  Petitioner was given leave to file a pro se brief, and he raised two issues: (1) Whether the trial court erred in omitting African-Americans from the jury; and (2) Whether the trial court erred in refusing to give a jury instruction on a lesser offense.  Ex. E.  The First District Court of Appeal affirmed per curiam without opinion on May 18, 2018, and the mandate was issued on June 15, 2018.  Ex. F.  See Nettles v. State, 246 So. 3d 1173 (Fla. 1st DCA 2018) (table).

Petitioner filed his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court raising two grounds for relief:

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through F submitted in conjunction with Respondent's answer.  See ECF No. 9 (9-1 through 9-6).

[2] Anders v. California, 386 U.S. 738, 744 (1967) (holding that when appointed counsel finds the appeal to be frivolous, counsel should so advise the court after a conscientious examination of the record and reference to anything in the record that might support an appeal, and counsel may request permission to withdraw).

(1) Petitioner was denied due process under the Fourteenth Amendment by the trial court's refusal to give a jury instruction on the offense of possession of paraphernalia; and

(2) Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated by a jury pool that included no African Americans.

ECF No. 1.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances.  Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)).  In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).  Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners'

federal rights."  Henry, 513 U.S. at 365 (quoting Picard, 404 U.S. at 275 (citation omitted)).  "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance."  O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993).  In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the

petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice. *See* Schlup v. Delo, 513 U.S. 298, 327 (1995). This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494). Such a case is "extremely rare." Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review,

a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' ") (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982)).

## Ground 1: Denial of Jury Instruction

Petitioner contends that he was denied due process guaranteed under the Fourteenth Amendment by the trial court's refusal to give a jury instruction on possession of drug paraphernalia in addition to instruction as to the charged offense of possession of a controlled substance.  ECF No. 1 at 5.  He contends that an instruction on possession of drug paraphernalia, a misdemeanor offense, would have supported his defense to the felony charge of possession of methamphetamine.  *Id.* at 11.  Respondent contends that Petitioner failed to exhaust his state remedy as to this claim because, although he raised the issue at trial and he appealed the denial of the jury instruction to the First District Court of Appeal, he failed to present a federal constitutional issue to the state court.  ECF No. 9 at 12-13.  In his pro se brief, Petitioner did cite three Eleventh Circuit cases pertaining to jury instructions.  *See* Ex. E at 15-16.  Notwithstanding Respondent's

contention that Petitioner failed to exhaust this ground in state court, the claim asserted in Ground 1 is without merit and should be denied.[3]

Petitioner was not charged with possession of drug paraphernalia. He was charged with possession of a controlled substance, to wit, methamphetamine. Prior to the presentation of evidence, defense counsel asked the court to include on the verdict form the offense of possession of drug paraphernalia as a lesser included offense. Ex. B at 2 (transcript pagination for proceedings on April 25, 2017). Counsel stated that if the court was not inclined to make it a lesser included offense on the verdict form, then he would ask that the court at least give the instruction for possession of drug paraphernalia so counsel could argue that in defense. *Id.* The judge deferred the decision until after admission of the evidence. *Id.*

Just prior to the last state witness, the trial court inquired of counsel about the proposed jury instructions. *Id.* at 43. Defense counsel stated that he did not anticipate putting on evidence and the only issue he had with the jury instructions was his request for an instruction on possession of drug paraphernalia. *Id.* He also voiced his earlier request for possession

---

[3] Section 2254(b)(2) provides that an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

of drug paraphernalia to be on the verdict form as a lesser offense. *Id.* at

44. The judge noted that when he looked at the standard jury instructions

and the indicated lesser offenses for possession of a controlled substance,

there was no listed lesser included offense for that charge.[4] The judge

further explained that if Petitioner had been charged with possession of a

controlled substance and possession of paraphernalia for the baggie, he

could instruct the jury on possession of paraphernalia. *Id.* Because

possession of drug paraphernalia would not be on the verdict form as a

lesser offense, the judge found there was no basis on which to give the

instruction for it. *Id.* at 45. The judge concluded:

> **THE COURT:** I'm not going to read [the instruction for]
> possession of paraphernalia if we're not putting it in as a lesser.
> I'm not going to read it. So your request is noted for the record,
> but I'm going to read the standards. And there's no lesser. So
> it's going to be guilty or not guilty on that count.

*Id.* at 46-47. At the conclusion of the evidence, defense counsel renewed

his request for a special instruction on possession of drug paraphernalia.

*Id.* at 81.

During trial, evidence was presented that Petitioner was stopped

while driving with an expired tag and no seatbelt. Ex B at 17. Petitioner

---

[4] Attempt is listed as the only listed lesser included offense for possession of a controlled substance. *See* Fla. Std. Jury Instr. (Crim.) 25.7 Possession of a Controlled Substance.

was seen fidgeting in his seat as officers approached.  He could not

produce a valid driver's license and advised that his license had been

suspended.  *Id.* at 18-19.  When Petitioner exited his vehicle, the officer

saw a yellow baggie to the left of the driver's seat between the seat and the

door.  The baggie had a small amount of crystalized substance in it.  The

officer testified that as he was performing a field test of the substance,

Petitioner stated that the yellow baggie was his "meth."  *Id.* at 19-28.

The State's expert from the Florida Department of Law Enforcement

testified that the amount of substance in the baggie that she tested was too

small to weigh.  *Id.* at 54.  She agreed the substance in the baggie was a

residue and that she dissolved the entirety of it for the testing.  *Id.* at 56.

She testified that the substance, in its dissolved form, was in the vial placed

into evidence with the baggie, and that the dissolved substance tested

positive for methamphetamine.  *Id.* at 53, 56.

Whether the jury was properly instructed is a state law issue.  Under

Florida law, a trial court has wide discretion regarding the instructions to be

given the jury.  *See, e.g.*, Kearse v. State, 662 So. 2d 677, 686 (Fla. 1995).

The initial determination of the applicable substantive law in each case

should be made by the trial judge and the judge is charged with correctly

instructing the jury in each case.  In the Matter of Use by Trial Courts of

Standard Jury Instructions in Criminal Cases, 431 So. 2d 594, 598 (Fla. 1981).  Florida's standard jury instructions are presumed correct and are preferred over special instructions.  Gutierrez v. State, 177 So. 3d 226, 230 (Fla. 2015).  Florida courts are generally required to adhere to the standard jury instructions unless the judge determines that the instruction does not accurately and adequately state the relevant law.  Moody v. State, 359 So. 2d 557, 560 (Fla. 4th DCA 1978).  *See also* Floyd v. Fla. Dep't of Corr., No. 3:15cv361-MCR/CAS, 2017 WL 4229054, at *7 (N.D. Fla. July 7, 2017), *report and recommendation adopted*, No. 3:15cv361-MCR/CAS, 2017 WL 4226141 (N.D. Fla. Sept. 22, 2017).

Florida Rule of Criminal Procedure 3.510 provides in pertinent part that the jury may convict the defendant of any offense that as a matter of law is a lesser included offense of the offense charged in the Indictment or Information and is supported by the evidence.  Thus, a permissive lesser included offense exists, and therefore may be instructed, if the evidence supports it when "the two offenses appear to be separate [on the face of the statutes], but the facts as alleged in the accusatory pleadings are such that the lesser [included] offense cannot help but be perpetrated once the greater offense has been."  Sanders v. State, 944 So. 2d 203, 206 (Fla. 2006) (bracketed material in original) (citation omitted).

In Florida, if the offense meets the requirements of a permissive lesser included offense, the Florida Supreme Court has held that the instruction on the permissive lesser offense is proper and the instruction may be given.  Williams v. State, 957 So. 2d 595 (Fla. 2007).  "Although the schedule [of lesser included offenses] 'is presumptively correct and complete,' . . . 'trial courts are charged with the responsibility to determine and properly instruct the jury on the prevailing law.' " *Id.* at 599-600 (citations omitted).  The state district courts have reached the same holding.  Thus, even if the lesser offense is not listed in the schedule of lesser included offenses, an instruction on a lesser offense is appropriate if the allegations of the greater offense contain all the elements of the lesser offense and the evidence at trial would support the lesser offense.  "Upon request, a trial judge is required to instruct the jury on a permissive lesser-included offense if two conditions are met: (1) the charging document alleges all the statutory elements of the lesser offense, and (2) there is some evidence presented at trial establishing each element of the requested lesser-included offense."  State v. Knighton, 235 So. 3d 312, 315 (Fla. 2018) (quoting Khianthalat v. State, 974 So. 2d 359, 361 (Fla. 2008).  Brown v. State, 206 So. 2d 377, 383 (Fla. 1968); Anderson v. State, 247 So. 3d 680, 682 (Fla. 1st DCA 2018), *review granted*, No. SC18-1059,

2018 WL 6681770 (Fla. Dec. 19, 2018); Farley v. State, 740 So. 2d 5, 6
(Fla. 1st DCA 1999); State v. Von Deck, 607 So. 2d 1388, 1389 (Fla.
1992); Andrews v. State, 679 So. 2d 859, 859 (Fla. 1st DCA 1996);
Benjamin v. State, 462 So. 2d 110, 112 (Fla. 5th DCA 1985); Norris v.
Jones, No. 4:14cv222-MW/CAS, 2016 WL 7757277, at *6 (N.D. Fla. Dec.
1, 2016), *report and recommendation adopted sub nom.* Curtis l. Norris v.
Julie L. Jones, Sec'y, Fla. Dep't of Corr., No. 4:14cv222-MW/CAS, 2017
WL 149809 (N.D. Fla. Jan. 13, 2017).

In this case, the Amended Information alleged only that Petitioner
was in actual or constructive possession of a controlled substance, to wit,
methamphetamine.  Ex. A at 26.  Under section 893.147, Florida Statutes,
it is a misdemeanor offense to possess drug paraphernalia, in pertinent
part, to "store, contain, or conceal a controlled substance."  § 893.147
(1)(a), Fla. Stat. (2016).  Therefore, to allege the offense of possession of
drug paraphernalia, the information must allege that the defendant
possessed paraphernalia, *inter alia*, to store, contain, or conceal a
controlled substance.  § 893.147(1)(a).  These elements were not alleged
in the Amended Information; thus, the trial court correctly denied including
possession of drug paraphernalia on the verdict form and denied an
instruction to the jury on that offense.  The state First District Court of

Appeal found no error in the trial court's refusal to give a jury instruction as to possession of drug paraphernalia.  See Ex. E, F.

Even if the state courts had erred in this regard, the correctness and sufficiency of the jury instruction to accurately reflect Florida law is a state law issue not cognizable in this § 2254 proceeding.  Questions of state law rarely raise issues of federal constitutional significance because a state's interpretation of its own laws does not involve a federal constitutional question, Tejada v. Dugger, 941 F.2d 1551, 1560 (11th Cir. 1991), even where the issue is couched in terms of equal protection and due process or other constitutional provisions.  *See* Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1998); Brown v. Warden, 562 F. App'x 779, 781 (11th Cir. 2014) (unpublished) (citing Williams v. Allen, 598 F.3d 778, 800-02 (11th Cir. 2010) (in a habeas corpus action, relying on state law to establish whether jury instructions were properly given)).

The federal courts "have long recognized that 'a mere error of state law' is not a denial of due process." Swarthout, 562 U.S. at 222 (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982)).  It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67–68 (1991); *see also* Carrizales v. Wainwright, 699 F.2d 1053, 1054–55 (11th Cir. 1983).  A

claim grounded on issues of state law provides no basis for federal habeas relief because a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. Engle, 456 U.S. at 120–21; Branan, 861 F.2d at 1508.

"A jury instruction that 'was allegedly incorrect under state law is not a basis for habeas relief,' " and the federal court is constrained on habeas review to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, " 'so infected the entire trial that the resulting conviction violate[d] due process.' " Jamerson v. Sec'y for Dep't of Corr., 410 F.3d 682, 688 (11th Cir. 2005) (quoting Estelle, 502 U.S. at 72).  Thus, even if state law error occurred in regard to denial of an instruction on possession of drug paraphernalia, the Eleventh Circuit has made clear that federal habeas relief will only be granted for state law errors that were so critical they rendered the entire trial fundamentally unfair in violation of the right to due process.  *Id.*; Branan, 861 F.2d at 1508.

Petitioner has not shown that the trial court's ruling and affirmance on appeal, which were in accord with Florida law on permissive lesser included offenses, constituted error that so infected the entire trial that his conviction is a violation of due process.  Moreover, even if the trial court

had read an instruction on possession of paraphernalia, the evidence of

methamphetamine residue was sufficient to convict him for possession of

methamphetamine.  *See, e.g.*, <u>State v. Eckroth</u>, 238 So. 2d 75, 77 (Fla.

1970) (stating that "the quantity possessed is immaterial" to the issue of

possession); <u>Peterson v. State</u>, 841 So. 2d 661, 662-63 (Fla. 4th DCA

2003) (same); <u>Gilchrist v. State</u>, 784 So. 2d 624, 626 (Fla. 3d DCA 2001)

(holding that trace amount of burnt cocaine residue was sufficient to

convict).

Petitioner has not demonstrated that the adjudication of the state

court was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United

States; or was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding.  28 U.S.C.

§ 2254(d).  Habeas relief on Ground 1 should be denied.

## **Ground 2: Jury Pool**

Petitioner contends in this claim that he was denied his Fifth, Sixth,

and Fourteenth Amendment rights to an impartial jury and to equal

protection because his trial jury pool did not include any African-

Americans.[5]  ECF No. 1 at 13.  He attaches to his petition a document titled

United States Census Bureau Quick Facts for Holmes County, which he

alleges shows there were at least 1706 African-Americans who could have

been called to jury service for his trial.[6]  ECF No. 1 at 31.  Although

represented by counsel at trial, Petitioner personally objected toward the

end of voir dire that there were no African-Americans in the jury pool.  Ex. B

at 63 (transcript pagination for proceedings on April 24, 2017).  The

following transpired:

> [**DEFENSE COUNSEL**]:  Mr. Nettles would first like to
> state an objection to the panel, that there's no African-American
> members.
>
> **DEFENDANT**:  He knows everybody in town, sir.
>
> **THE COURT**: One of the things that we ask - - obviously I
> can't help who showed up for jury duty.  Hang on.  Your
> objection is noted for the record.  As far as him knowing - -
>
> **DEFENDANT**:  If there's no African-Americans choices,
> I'm a sitting duck.
>
> **THE COURT**: Your objection is noted for the record.  As
> far as him knowing people, one of the questions they obviously

---

[5] Section 40.231, Florida Statutes, explains that "[w]hen persons named in a jury venire generated by the clerk are summoned to attend a court as jurors, they may be placed in a jury pool from which the court may draw persons to serve as jurors."  It appears that Petitioner is complaining about the racial makeup of the jury pool that served as the source of his specific jurors in this case.

[6] It is unclear how Petitioner arrived at this calculation as the document, ECF No 1 at 31, does not reflect a minimum of 1706 African-Americans in Holmes County as of the date of the data, 2017.  Based on the percentages reported in the document, the number of African-Americans in Holmes County would be substantially smaller, and the number of those who meet the requirements to serve even smaller.  It does not appear that this document was ever presented to the state court.

ask is if they can be fair and impartial.  If there are people on there that think need to be stricken, the way - -

> **DEFENDANT**:  I'm not going to . . .

> **THE COURT**:  The way - -

> **DEFENDANT**:  I understand, I'm trying to save my life.  It took 15 minutes, and there's no African-Americans on there.

> **THE COURT**: Well, here's what we're going to do, we're going to - -  no strikes for cause, correct?

> [**PROSECUTOR**]; No, sir.

> **THE COURT**: Do you have any challenges for cause?

> [**DEFENSE COUNSEL**]: I don't.

> **DEFENDANT**: Sir, there ain't - -

> **THE COURT**:  Hang on, listen, listen, this isn't the time for plea negotiations. . . .  You have six strikes, you could strike six people that you want to for any reason.

> **DEFENDANT**: There's no African-Americans, it don't matter.

> . . . .

> **DEFENDANT**: In a different circumstance, if you were going to trial - -

> **THE COURT**:  We pick them at random.

> **DEFENDANT**:  Ain't nobody in here that - -

> **THE COURT**:  . . . .  Other than your objection to there being no African-Americans, do you have any other strikes that you want to make?

> **DEFENDANT**:  No.

Ex. B at 63-64, 67 (transcript pagination for April 24, 2017, jury selection).

After trial, Petitioner's pro se brief on direct appeal included the issue of

whether he was discriminated against because no African-Americans were

in the jury pool.  Ex. E.  The First District Court of Appeal affirmed per

curiam without opinion.  Ex. F.  Nettles v. State, 246 So. 3d 1173 (Fla. 1st

DCA 2018) (table).

Respondent argues that the claim was not exhausted in state court

because Petitioner obtained no ruling by the trial court on his objection,

thus not preserving it for appellate review.  ECF No. 9 at 21.  Respondent

also contends that under Florida law, the challenge to the jury panel was

untimely and was not presented in writing prior to jury selection and

resolved before any jurors are examined.[7]  Id.  However, the fact that a

petitioner failed to abide by a state procedural rule does not, in and of itself,

prevent this Court from reviewing a federal claim: "[T]he state court must

actually have relied on the procedural bar as an independent basis for its

disposition of the case."  Harris v. Reed, 489 U.S. 255, 262 (1989) (citation

omitted).  Because the appellate court in the present case issued no written

---

[7] Florida Rule of Criminal Procedure 3.290 states in pertinent part:

The state or defendant may challenge the panel.  A challenge to
the panel may be made only on the ground that the prospective jurors
were not selected or drawn according to law.  Challenges to the panel
shall be made and decided before any individual juror is examined, unless
otherwise ordered by the court.  A challenge to the panel shall be in
writing and shall specify the facts constituting the ground of the challenge.
. . .

This rule refers to challenging a jury panel rather than the venire or jury pool from which
the venire was drawn, but compliance with this rule provides the opportunity for
challenging the jury pool on the question of whether there was a systematic exclusion of
any distinctive group.  See Cargill v. State, 121 So 3d 1157, 1159 (Fla. 1st DCA 2013).

opinion, the record fails to contain "a 'plain statement' that [the state court's] decision rests upon adequate and independent state grounds." *See Id.* at 261 (quoting Michigan v. Long, 463 U.S. 1032, 1042 (1983)).

Respondent argues that the district court's silent affirmance should be presumed to rest on independent and adequate state procedural grounds barring federal review.  ECF No. 9 at 22 (citing Bennett v. Fortner, 863 F.2d 804, 807 (11th Cir. 1989) ("[W]hen a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default.")).  However, in the present case, procedural default was not argued to the trial judge and the trial judge did not deny the challenge on any specified ground—not to mention a procedural ground. No brief was filed by the State on direct appeal and thus no procedural default was asserted on appeal as to Petitioner's claim that his trial was unfair due to lack of African-Americans in the jury pool or the venire from which his prospective jurors were drawn.  Accordingly, under the authority cited by Respondent, this Court cannot assume that the First District Court of Appeal affirmed on procedural grounds.  Regardless of any procedural default, the claim lacks merit and should be denied.

Petitioner alleges that the jury pool in his case included no African-American prospective jurors.  ECF No. 1 at 13.  He alleges, although no facts have been established, that a minimum of 1,706 persons of color were available in Holmes County according census information Petitioner located after the trial.  *Id.*  He notes that under Florida law, section 40.02, Florida Statutes, the clerk of the court is to select by lot and at random a sufficient number of names from the initial juror candidate list of persons qualified to serve as jurors.  *Id.*  He concludes that this selection was not random and was the result of racial discrimination, as evidenced by the fact that no African-Americans were on the list.  *Id.* at 14.  He also alleges without factual basis that the jury pool consisted only of persons who were victims of crime, knew the State Attorney, or were friends or family of law enforcement.  *Id.*  Finally, he alleges that the clerk of court purged persons of color from the jury pool.  None of these alleged grounds were voiced to the trial judge at trial.  None of these allegations of fact have been established.

The Sixth and Fourteenth Amendments to the United States Constitution require that jurors will be drawn from a fair cross-section of the community.  Taylor v. Louisiana, 419 U.S. 522, 527 (1975).  Jury pools, panels, or venires from which juries are drawn must not systematically

exclude distinctive groups in the community, although this imposes no requirement that the resulting jury that is chosen mirrors the community. *Id.* at 538. "Defendants are not entitled to a jury of any particular composition." *Id.*

In Duren v. Missouri, 439 U.S. 357, 527 (1979), the Supreme Court established the framework for analyzing fair cross-section claims. To succeed on this "fair cross section" argument, Petitioner had to show that: (1) the group alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under-representation is due to systematic exclusion of the group in the jury-selection process. *See id.* at 364.

Discriminatory selection of a jury pool or venire may also be challenged under the Equal Protection Clause of the Fourteenth Amendment. *See* Castaneda v. Partida, 430 U.S. 482, 494 (1977). To establish a prima facie claim for an equal protection violation, a petitioner must show (1) that he or she is a member of a group capable of being singled out for discriminatory treatment, (2) that members of this group were substantially under-represented on the venire, and (3) that the venire

was selected under a practice that is susceptible of abuse or not racially

neutral.  Castaneda, 430 U.S. at 494.  Although the prima facie case for an

equal protection claim resembles the elements of a fair cross-section claim,

the purpose of an equal protection claim is to determine whether the

disparity in the jury venire is the result of a discriminatory purpose. *See*

Duren, 439 U.S. at 368 n.26.  Thus, whereas the inquiry in a fair cross-

section claim focuses on the representativeness of the jury venire, the

focus of an equal protection claim is whether members of a discrete group

have been intentionally denied the opportunity to serve on a jury.  *Id.*

Petitioner failed to show a violation of either his fair cross-section

right or his equal protection right because he stated only in conclusory

terms that the lack of African-Americans on the panel resulted from a

systematic exclusion in the selection process or from purposeful

discrimination as required by Taylor and Duren, and he offered no proof

that the lack of African-Americans in the jury pool resulted from a process

that was unfair or unreasonable.  *See* also United States v. Tapia, 59 F.3d

1137, 1142 (11th Cir.1995) (rejecting defendant's contention that venire

from which his petit jury was chosen was unconstitutionally composed

because it contained too few African Americans, where defendant failed to

present any evidence that indicated under-representation was due to

systematic exclusion from the selection process); Berryhill v. Zant, 858

F.2d 633, 638 (11th Cir.1988) (defendant claiming fair cross-section

violation must show that distinctive group is systematically excluded from

the jury source); *see also, e.g.*, United States v. Downs, 217 F. App'x 841,

845 (11th Cir. 2006) (unpublished) (defendant failed to establish violation of

Sixth Amendment right where he failed to show that exclusion of African

Americans from jury pool was systematic and offered no proof that under-

representation was unfair or unreasonable); Graham v. Crews, No.

3:12cv55-MCR/EMT, 2012 WL 6923759, at *17 (N.D. Fla. Dec. 17, 2012),

*report and recommendation* adopted Graham v. Crews, No. 3:12cv55-

MCR/EMT, 2013 WL 249232 (N.D. Fla. Jan. 22, 2013).

Section 40.01, Florida Statutes, provides that jurors shall be taken

from the male and female persons at least 18 years of age who are

citizens, legal residents of the state and county, and who possess a driver

license or identification card or who have executed a prescribed affidavit.

Petitioner presented nothing to the trial court to indicate that the list of

qualified jurors generated for his jury pool did not meet these requirements

or that qualified African-American persons were purposely excluded from

the list.  Petitioner has failed to demonstrate that he was tried by a jury

arising from a pool selection system that systematically excluded African-

Americans or that provided an opportunity for discrimination.  *See* Duren, 439 U.S. at 364; Castaneda, 430 U.S. at 494.  As the trial court noted, the jury pool was picked at random and the court could not control who showed up for jury duty.  *See* Ex. B at 63, 67.  Petitioner did not provide any basis to show that the pool was not selected at random according to law or that the lack of African-Americans in the jury pool was the result of purposeful exclusion.

Petitioner has not shown that the state court adjudication of his claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *See* 28 U.S.C. § 2254(d).  Section 2254 relief on Ground 2 should be denied.

## **Conclusion**

Based on the foregoing, Petitioner Larry Bryant Nettles is not entitled to federal habeas relief.  Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

## Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No. 1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 27, 2019.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this
Report and Recommendation, a party may serve and file specific
written objections to these proposed findings and recommendations.
Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon
all other parties.  A party may respond to another party's objections
within fourteen (14) days after being served with a copy thereof.  Fed.
R. Civ. P. 72(b)(2).  Any different deadline that may appear on the
electronic docket is for the Court's internal use only and does not
control.  If a party fails to object to the magistrate judge's findings or
recommendations as to any particular claim or issue contained in a
Report and Recommendation, that party waives the right to challenge
on appeal the district court's order based on the unobjected-to factual
and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**